# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| JAMES R. FRANCIS<br>    LA. DOC #92059<br>VS. | CIVIL ACTION NO. 6:17-CV-290<br><br>SECTION P<br><br>DISTRICT JUDGE |
| STATE OF LOUISIANA | MAGISTRATE JUDGE HANNA |

## REPORT AND RECOMMENDATION

Pro se petitioner James R. Francis, an inmate in the custody of Louisiana's Department of Corrections, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 on February 16, 2017. Petitioner attacks his 2012 conviction for second degree murder and the life sentence imposed thereon by the Fifteenth Judicial District Court, Lafayette Parish. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

## Statement of the Case

The underlying facts in this case have been set forth by the Louisiana Third Circuit Court of Appeal as follows:

> On August 31, 2008, Defendant shot the victim, Qaher Abualoff, in the parking lot at Food World in Lafayette, Louisiana. The victim sustained a bullet wound to the head above the eyebrow and died two days later.
>
> Tawfic "Sam" Saleh was a part owner of Food World and was in the process of transferring it to the new owners, the victim and Saber Zaben, at the time of the shooting. Defendant had worked for Mr. Saleh about two years before this incident as a "helper carpenter."

On the day of the shooting, Mr. Saleh first saw Defendant when he came into the store, very angry. Defendant asked for Mr. Saleh, who spoke to Defendant in the back of the store. When he saw Defendant walk out of the store, Mr. Saleh walked out also. As they talked outside, Defendant's brother, Michael Francis, came outside, and appeared to be very angry. Michael had been arguing with the victim inside the store.

The victim came outside, and Michael exchanged words with him. Mr. Zaben and the victim's wife also came outside, and all of them watched the argument. They tried to make Michael leave. Defendant then stepped back and lifted his shirt, and Mr. Saleh saw a gun. Defendant began shooting. The victim was shot in the head, and the others ran back inside. Mr. Saleh heard another shot that he thought was intended for him.

Everyone went to the office, then Mr. Saleh went back to look outside. He saw a green car with the trunk open, and he saw Michael grab the shotgun and put it in the trunk. Mr. Saleh never saw the victim do any threatening act.

Wagdan Hussein, Mr. Zaben's wife, testified that she saw Michael come in the store and purchase two beers. Michael became very upset because he wanted the victim to package the two beers in separate bags. Michael began yelling and swearing, and he walked outside. Mr. Zaben followed him outside to see why he was so mad. The victim tried to calm Michael and then asked him to leave and not come back. Mrs. Hussein testified that Defendant then pulled the gun and shot the victim. Mrs. Hussein identified Defendant as the shooter at trial.

Joshua Duruise, who was at the store at the time of the incident, testified that he saw Defendant hollering at Mr. Saleh outside the store on the day of the incident. According to Mr. Duruise, a man inside the store (Michael) was buying some beer and was yelling and complaining that the beer needed to be in two bags. A man behind the counter (Mr. Saleh) attempted to calm Michael and asked why he was so mad. When Michael threatened to go behind the counter and kick Mr. Saleh and then headed in that direction, "the guy behind the counter started to come out like he was going to fight him." Mr. Duruise stated that the victim, who "was trying to make peace," urged the customer to leave the store. Mr. Duruise stated that Defendant was outside, and the victim

went outside. The victim was holding his baby, and he gave the child to his wife when "[h]e went outside to break them up[,] and he got shot." Mr. Duruise testified that he did not see anyone pushed or hit but that he saw Defendant pull a gun out of his shirt and kill the [Pg 3] victim. Less than a minute passed between the time they went outside and the time the shot was fired.

Patrena Rubin, who was shopping at Food World at the time of the incident, testified that she saw Mr. Saleh ask a man where he was from, "trying to be nice to the customer[,] but the customer got upset." The customer went outside, and Ms. Rubin went outside and got in her car. She heard a gunshot and saw the victim fall to the ground. Ms. Rubin identified Defendant as the shooter.

Andy Latiolais testified that he was walking into Food World when he saw a "guy having an altercation with some people. He was very loud, arguing. The other man was saying, 'Leave, leave.'" The next thing Mr. Latiolais knew, a "guy in a big hat drew out a pistol and shot the [victim]." Mr. Latiolais heard another shot that "sounded close" and then heard a third shot. Although the victim and the other man (Michael) argued, the victim was keeping his distance, and Mr. Latiolais testified that he did not see anyone hit or push anyone else.

Michael Francis also testified at trial. He was charged with second degree murder of the victim and as a felon in possession of a firearm, but he had not yet gone to trial. Michael testified that when he and Defendant arrived at Food World on the day of the incident, Defendant left him to talk outside with Mr. Saleh, and Michael went inside to get some beer. According to Michael, a man in the store (the victim) asked Michael where he was from several times and followed him to his car outside. Mr. Saleh put his hands on Michael, "[a]nd he placed the little girl on [his] arm," making Michael feel like he could not defend himself. Another man (apparently the victim) stood nearby with his hands on his pocket. Michael then heard a gunshot; he ran to the back seat of his car and grabbed a car jack to use as some type of protection.

Michael testified that the victim was trying to pry something out of his pocket. He never saw what was in the pocket, and he was never concerned about his safety. However, Michael testified that Mr. Saleh and the victim were approaching him and Defendant in a manner that

3

> did not feel friendly and that he felt as if they were trying to agitate him or take something from him. Michael stated that there was no physical contact other than Mr. Saleh grabbing Michael's arm.
>
> At the time of his testimony, Michael was charged as a principal in another murder in Abbeville and with being a felon in possession of a firearm. He had a prior conviction of manslaughter.
>
> Defendant and Michael were identified through photo lineups. Michael was arrested and charged as a principal to this murder, and he did not know where Defendant was after that time. Police conducted an extensive search for Defendant, who was finally located in Houston and transported back to Lafayette almost a year later, on July 8, 2009.

*State v. Francis*, 111 So. 3d 529, 2013 La. App. LEXIS 635, 12-1221 (La.App. 3 Cir. 04/03/13).

Petitioner, James R. Francis, was charged by Grand Jury Indictment with second degree murder, a violation of La. R.S.14:30.1. Mr. Francis pled not guilty to the charge on August 18, 2009, and on July 24-25, 2012, Mr. Francis was tried by a jury and found guilty as charged. *See Original Brief of Appellant, State of Louisiana v. James R. Francis,* KA-12-1221, 2012 WL 6043737. Thereafter on August 27, 2012, Mr. Francis received a sentence of life at hard labor without benefit of parole, probation or suspension of sentence. *Id.* On that same date, defense counsel filed a Motion for Appeal and Designation of Record. *Id*. The trial court granted petitioner's appeal, appointing the Louisiana Appellate Project to represent Mr. Francis on appeal. *Id.*

On November 19, 2012, appointed counsel filed a direct appeal in the Third Circuit Court of Appeal, alleging 3 assignments of error: (1) insufficient evidence to convict on

second degree murder charge; (2) petitioner's constitutional right to confront accusers was violated by trial court's admission of autopsy report over defense counsel's objection and this error cannot be adequately reviewed because bench conference at which it was argued was not recorded; and (3) trial court erred in improperly advised [sic] petitioner as to the prescriptive period for filing post-conviction relief. *State of Louisiana v. James R. Francis*, KA-12-1221, (La. App. 3 Cir.), 111 So.3d 529. On April 3, 2013, the Third Circuit affirmed the conviction, with instructions to the lower court to inform petitioner of the provisions of La. Code Crim. P. Art. 930.8. *Id.*

Petitioner applied for writs of certiorari to the Louisiana Supreme Court and on November 8, 2013, his writ application was denied without comment. *State ex rel James R. Francis v. State of Louisiana*, 2013-KH-1252 (La. 11/8/13), 125 So.3d 449. He did not apply for certiorari in the United States Supreme Court. [Doc. 1, p. 3, ¶6(d).]

On an unknown date, petitioner filed an Application for Post Conviction Relief in the trial court, claiming ineffective assistance of counsel. An evidentiary hearing was held on March 26, 2015, at which time petitioner's application was denied. He filed a writ application in the Third Circuit Court of appeal, bearing Docket number KH-15-00403, which was denied. Petitioner sought supervisory and/or remedial writs in the Louisiana Supreme Court; same were denied on October 28, 2016. *State ex rel James R. Francis v. State of Louisiana*, 15-KH-1702 (La. 10/28/16), 203 So.3d 229; Rec. Doc. 1-3.

Petitioner filed the instant petition for habeas relief on February 16, 2017. He raises

5

a claim of ineffective assistance of counsel. The matter is now before the Court.

## Law and Analysis

**I. Standard of Review - 28 U.S.C. § 2254**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs habeas corpus relief. The AEDPA limits how a federal court may consider habeas claims. After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is limited to the record that was before the state court[.]" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). An inmate must show that the adjudication of the claim in state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5 Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362 (2000)). "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the

6

relevant state court decision." *Id.* at 740. Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court "identifies the correct governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal courts presume such determinations to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## II. Petitioner's Claim of Ineffective Assistance of Counsel

Petitioner claims that his trial counsel rendered ineffective assistance by not thoroughly investigating his case or visiting him in jail. He also alleges that he and his attorney did not get along and that his attorney did not act in his best interest.

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that his counsel's actions fell below an objective standard of reasonableness and that the ineffectiveness of counsel prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). If the petitioner does not make a sufficient showing as to one prong of the test, the other prong need not be considered. *Tucker v. Johnson*, 115 F.3d 276, 281 (5 Cir. 1997). The prongs of the test need not be analyzed in any particular order. *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5 Cir. 1997). Further, "mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green v. Johnson*, 160 F.3d 1029, 1042-43 (5 Cir. 1998).

When applying the first prong of *Strickland*, federal courts do not second-guess the attorney's decision from the distorting perspective of hindsight; rather, they presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy. See *Strickland*, 466 U.S. at 689-90. The burden, therefore, is on the petitioner to show that counsel's representation fell "outside the wide range of professionally competent assistance." *Id.* at 690; *Ward v. Whitley*, 21 F.3d 1355 (5 Cir. 1994). In other words, the petitioner must demonstrate that counsel's representation was objectively unreasonable. *Strickland*, 466 U.S. at 688.

To establish prejudice, the second prong, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "That requires a substantial, not just conceivable, likelihood of a different result." *Cullen*, 131 S. Ct. at 1403 (internal quotation marks and citation omitted). Stated differently, a petitioner must demonstrate that counsel's actions "were so serious as to render the proceedings unreliable and fundamentally unfair." U.S. *v. Saenz-Forero*, 27 F.3d 1016, 1021 (5 Cir. 1994); *Murray v. Maggio*, 736 F.2d 279 (5 Cir. 1984). Unreliability and unfairness do not result "if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him.*" Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

Finally, when review is governed by the AEDPA, review of the state court's

resolution of the ineffective assistance of counsel claim is "doubly deferential," *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009), since the question is "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011). Importantly, "[t]his is different from asking whether defense counsel's performance fell below *Strickland's* standard," because the "state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* Consequently, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 786. To obtain relief, a petitioner must show that the state court's ruling on the claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786- 87. "The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* at 788.

Petitioner's claims that his attorney was ineffective stem from the fact that he and his court-appointed attorney had a contentions relationship. Trial counsel, Mr. Kirk Piccione, admitted his personal dislike for petitioner at the March 26, 2015, evidentiary hearing:

Q: Let me get this out of the way. Did you like Mr. Francis?

A: No.

Q: Did you have a pretty contentious relationship with him?

A: Yes.

[Rec. Doc. 12-3, pp. 72-73]

9

Petitioner asserts that this mutual hostility between petitioner and counsel led to the "breakdown in the adversary process." [Rec. Doc. 1-2, p. 9] Petitioner wrote to the Louisiana Bar Association to request a change in his counsel. He was advised to bring his request to the trial court; his request was denied. Petitioner asserts that this denial led to his refusal to participate in his own defense.

The trial court heard testimony from petitioner and his trial counsel at the March 2015 evidentiary hearing. Petitioner testified that his attorney did not visit him in jail one time, nor did he investigate the allegation that the victim was a drug dealer and was wanted for murder in New Orleans. He also alleged that the videotape evidence shown at the trial was not in the original copy of the video, and that it was harmful to his defense.

Mr. Piccione testified that, with respect to the videotape in question, he not only attempted to obtain the original, which was destroyed following the incident, prior to his representation of petitioner, but also hired an expert to consult regarding the video. Furthermore, he cross-examined the witness after the video was shown to the jury, after first attempting to exclude the video. *Id.* at pp. 74, 78.

He testified that the petitioner never gave him any information concerning any alleged drug dealing by the victim or that he was possibly wanted for murder in New Orleans. *Id.* at p. 75. Petitioner *admitted* to same. *Id.* at p. 69.

Petitioner put forth no evidence to support his allegation that counsel did not visit him in jail, or failed to consult with him prior to trial. Trial counsel testified that he did visit the

petitioner in jail, and asserted that records would prove the existence of those visits. *Id.* He also testified that there were several pre-trial conferences and trial dockets, during which he was able to communicate with his client. *Id.* at p. 76. He testified that he felt he had adequate access to petitioner necessary to prepare a defense and that he put forward the best defense possible with the facts available, that petitioner was acting in self defense. *Id.*

"Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983). Accordingly, petitioner has not established his trial counsel's deficient performance and has failed to demonstrate the state court's denial of this claim was contrary to or involved an unreasonable application of federal law.

In *United States v. Young*, 482 F.2d 993 (5th Cir. 1973) the Fifth Circuit held:

> Although an indigent criminal defendant has a right to be represented by counsel, he does not have a right to be represented by a particular lawyer, or to demand a different appointed lawyer except for good cause. U.S.C.A.Const. Amend. 6.

Despite having the opportunity at the evidentiary hearing, petitioner failed to offer any evidence to bolster his allegation that Mr. Piccione's performance was ineffective. The trial court heard testimony from both petitioner and his counsel and found that petitioner failed to carry his burden of proof. This Court finds that the lower court properly interpreted and applied *Strickland v. Washington, supra,* and notes that its ruling was accepted by the Third

11

Circuit of Appeals as well as the Louisiana Supreme Court. Accordingly, federal *habeas* relief is not warranted with respect to this claim.

## Conclusion and Recommendation

For the foregoing reasons,

**IT IS RECOMMENDED THAT** the instant application be **DENIED** and **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it

enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. See 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

    In Chambers, Lafayette, Louisiana November 28, 2017.

                                                      **PATRICK J. HANNA**
                                **UNITED STATES MAGISTRATE JUDGE**